UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

BURGER KING COMPANY LLC,

    Plaintiff,

vs.

ALTAF A. CHAUS,

    Defendant.
_____/

**PLAINTIFF BURGER KING COMPANY LLC'S COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Burger King Company LLC ("BKC"), by and through the undersigned counsel, sues Defendant Altaf A. Chaus ("Defendant") and states:

1. This is an action to enjoin Defendant's unauthorized use and display of BKC's valuable trademarks and service marks in connection with the unlawful operation of a restaurant as an authorized BURGER KING® restaurant. Additionally, this is an action for money damages against Defendant for breaches of his written agreements with BKC.

**THE PARTIES**

2. Plaintiff BKC is a Florida limited liability company with its principal place of business located in Miami, Florida.

3. Defendant is a citizen and resident of California.

**JURISDICTION AND VENUE**

4. BKC operates and franchises restaurants throughout the World. BKC's franchise operations are conducted and supervised from its World Headquarters located in Miami, Florida.

BKC and Defendant have carried on a continuous course of direct communications by mail, e-mail and telephone through BKC's World Headquarters in Miami, Florida.

5. The course of dealing between BKC and its franchisees, including Defendant, shows that decision-making authority is vested in BKC's World Headquarters in Miami, Florida.

6. Defendant negotiated with BKC in Miami, Florida for the acquisition of a long-term franchise agreement and other agreements with the knowledge that he they would benefit from his affiliation with BKC.

7. Defendant voluntarily entered into a franchise relationship with BKC, which envisioned continuing and wide-reaching contacts with BKC in Florida, including regulation of his franchised business from BKC's World Headquarters in Miami, Florida.

8. Defendant has purposefully availed himself of the benefits and protection of Florida law by entering into a franchise agreement with BKC which expressly provides that Florida law will govern any disputes among the parties.

9. This Court has jurisdiction over this action based upon:

    (a) Section 39 of the Lanham Act, 15 U.S.C. 1121, and 28 U.S.C. 1331, 1337, and 1338 (a), for the claims arising out of Defendant's violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. 1114 and 1125(a); and,

    (b) 28 U.S.C. 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. 1367, for the claims arising out of Defendant's common law unfair competition and Defendant's breach of contract.

10. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 and the forum selection clauses agreed to by the parties in the written agreements.

11. Defendant has further agreed in writing that in any litigation to enforce the terms

of the franchise agreement between BKC and Defendant, BKC, as the prevailing party, shall be paid by Defendant all costs, including attorneys' fees, incurred as a result.

12. BKC has engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the franchise agreement between the parties.

13. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## THE BKC MARKS

14. To identify the source, origin, and sponsorship of BKC's facilities, products, and services, BKC has extensively employed, caused to be advertised, and publicized throughout the United States certain distinctive symbols as trademarks and service marks (the "BKC Marks"). BKC was the first to adopt and use the BKC Marks as trademarks and service marks, and all right, title, and interest to the BKC Marks and the design, decor, and image of BURGER KING® restaurants remain vested solely in BKC.

15. BKC operates and franchises BURGER KING® restaurants using the BKC Marks on signs, menu boards, posters, translights, uniforms, plates, cups, tray liners, and other items, and in advertising to the public through television, radio, and print media.

16. Set forth below is an abbreviated listing of the BKC Marks registered in the United States Patent and Trademark Office:

| Reg. No. | Mark | Issue Date |
|---|---|---|
| 0782990 | HOME OF THE WHOPPER | 1965 (renewed through 2025) |
| 0869775 | BURGER KING | 1969 (renewed through 2029) |
| 0899775 | WHOPPER | 1970 (renewed through 2030) |
| 0901311 | BURGER KING logo | 1970 (renewed through 2030) |
| 1057250 | BURGER KING logo | 1977 (renewed through 2027) |
| 1081348 | HAVE IT YOUR WAY | 1978 (renewed through 2028) |

| Reg. No. | Mark | Issue Date |
|---|---|---|
| 1550398 | CROISSAN'WICH | 1989 (renewed through 2029) |
| 2428846 | BURGER KING Crescent Logo | 2001 (renewed through 2021) |

17. The registrations of the BKC Marks are currently in full force and effect, and BKC has given notice to the public of the registration of the BKC Marks as provided in 15 U.S.C. §1111. BKC owns each of the registrations for the BKC Marks listed above. BKC has the exclusive right to use the BKC Marks in the United States.

18. Pursuant to franchise agreements between BKC and its franchisees, BKC grants its franchisees a limited license and authority to use and display the BKC Marks, but only in such manner, and at such locations and times, as are expressly authorized by BKC. In no event is a franchisee authorized to use the BKC Marks after the expiration or termination of its franchise. Such unauthorized use is expressly prohibited under the terms of all BKC franchise agreements, including Defendant's BURGER KING® Restaurant Franchise Agreement with BKC.

19. BKC's products bearing the BKC Marks are offered and sold in interstate commerce.

20. BKC and its franchisees have spent many millions of dollars in the United States and abroad advertising and promoting BKC's restaurants, services, and products.

21. The substantial investment made in the BKC Marks has resulted in valuable good will for the BKC Marks and for the restaurants, products, and services bearing those marks. BKC products and services have met with popular approval and, as a result of BKC's extensive sales, advertising, promotion, and publicity, the public is familiar with the BKC Marks. The products and services associated with the BKC Marks are understood by the public to be produced, marketed, sponsored, supplied by, and/or affiliated with BKC.

**THE BURGER KING SYSTEM**

22. BKC has developed a comprehensive restaurant operating system for all BKC franchisees in order to protect the image of BURGER KING® restaurants and to ensure uniform, high quality standards. The detailed specifications and procedures of the "Burger King System" are set forth in BKC's Manual of Operating Data (the "OPS Manual").

23. Every BKC franchisee is required by its franchise agreement to operate its franchise in accordance with the specifications and procedures contained in the OPS Manual. The OPS Manual sets forth in detail the mandatory BKC restaurant operating standards, specifications, and procedures, including rules governing areas such as food preparation and handling, cleanliness, health, sanitation, quality, and speed of service. In addition to these strict quality, service, and cleanliness requirements, the OPS Manual prescribes specified training procedures to ensure that these requirements are met. The OPS Manual is a confidential BKC document which a franchisee is permitted to have only during the term of the franchise agreement.

24. BKC offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards, including training for various levels of personnel as well as other regional and local training and instructional programs. This enables BKC to safeguard the integrity of BURGER KING® restaurants, the BURGER KING® System, and the BKC Marks.

25. Integral to BKC's compliance and assistance program are periodic inspections and consultations undertaken by BKC personnel and designees specially trained to observe and advise in all areas of restaurant operating procedure. Pursuant to BKC's restaurant visitation process, action plans are issued after a restaurant inspection is conducted. These action plans serve as a training opportunity for the franchisee and as a quality assurance process for BKC to ensure that

critical quality, service, and cleanliness standards are being met by the franchisee. Each BURGER KING® Restaurant Franchise Agreement confers upon BKC the right to enter the restaurant premises to perform this vital function.

26. As a result of its substantial expenditures of money and effort in developing and implementing the BURGER KING® System, BKC has established a high reputation and a positive image with the public as to the quality of products and services available at BURGER KING® restaurants, which reputation and image have been, and continue to be, valuable assets of BKC. BKC strives to maintain that reputation through its careful selection of authorized franchise owners, facilities, and locations and its careful supervision over the manner and quality of its restaurant service.

## BKC'S WRITTEN AGREEMENTS WITH DEFENDANT

### A. The Franchise Agreement

27. Defendant owned and operated a franchised BURGER KING® Restaurant ("Restaurant") in California using BKC's systems and names, including service marks and trademarks, in accordance with the terms and conditions of a BURGER KING® Restaurant Franchise Agreement, as amended (the "Franchise Agreement"), as set forth below:

| BURGER KING® Restaurant Number | ADDRESS | Franchise Agreement Dated |
|---|---|---|
| 7318 | 1305 N. Bascom Avenue San Jose, CA 95128-1248 | 4/4/2012 |

## RELEVANT TERMS OF THE FRANCHISE AGREEMENT

28. Under the terms of the Franchise Agreement, Defendant is obligated to make payments to BKC for royalties, advertising and other fees. Specifically, the Franchise Agreement requires Defendant to pay BKC a royalty of a certain percentage of weekly gross sales in return

for the use of the BURGER KING® System and the BKC Marks. Additionally, the Franchise Agreement obligates Defendant to pay BKC an amount equal to a certain percentage of monthly gross sales for the preceding calendar month in return for advertising, sales promotion and public relations expenditures made by BKC on behalf of the entire BURGER KING® System. All royalty and advertising payments are required to be made to BKC in Miami, Florida. The Franchise Agreement provides that the failure to make such payments constitutes an act of default under the Franchise Agreement.

29. The Franchise Agreement was to originally expire by its own terms on March 17, 2022. Pursuant to the Agreement to Extend Franchise Agreement, the expiration date was extended to March 17, 2023.

30. By letter dated February 28, 2024, BKC notified Defendant that, among other things, he must cease operation of the Restaurant and comply with all of the Franchise Agreement's post termination covenants by August 26, 2024.

31. Defendant failed to close the Restaurant and comply with the post-termination covenants, as required.

**TERMINATION**

32. Terminated and expired franchisees are prohibited from identifying themselves as either a current or former BURGER KING® Franchisee, from displaying or using any of BKC's trade secrets, promotional materials, the BKC Marks, or any mark confusingly similar. Terminated and expired franchisees are further required, upon termination or expiration of their BURGER KING® Restaurant Franchise Agreement, to immediately make such removals or changes in signs and the building as BKC shall request so as to effectively distinguish the building and premises from its former appearance and from any other BURGER KING® restaurant.

33. In violation of the Franchise Agreement, Defendant continues to hold himself out to the public as owning and/or operating a genuine and authorized BURGER KING® Restaurant by continuing to display and/or use the BKC Marks at the Restaurant subsequent to the Franchise Agreement's termination. In so doing, Defendant is infringing upon the BKC Marks and breaching his explicit obligations under the Franchise Agreement.

34. Additionally, Defendant has not returned the OPS Manual and other operational manuals to BKC as required by the Franchise Agreement.

## **LIKELIHOOD OF CONSUMER CONFUSION AND DECEPTION**

35. Defendant has not tendered to BKC or removed all BURGER KING® signs, logos, menu boards, posters, translights, uniforms, plates, cups, tray liners, and other items bearing the BKC Marks, name, symbols, or slogans, or which are otherwise identified with BURGER KING® restaurants and are located at the Restaurant.

36. Defendant's continued use of the BKC Marks or any items associated with the BURGER KING® name, symbols, or slogans at the Restaurant is without BKC's license or consent, and has caused or is likely to cause mistake, confusion, or deception in the minds of the public as to source, affiliation, and sponsorship. Upon seeing the familiar BKC Marks, through Defendant's unauthorized use or display thereof, consumers will be deceived into concluding that the products and services sold at the Restaurant are made or supplied by BKC, are prepared in the prescribed BKC manner and subject to BKC's supervision, are sponsored or endorsed by BKC, and bear the BKC Marks pursuant to BKC's authority and permission. Such impressions are calculated to and will have a material influence on customers' purchasing decisions, inducing them to patronize the Restaurant in reliance on the goodwill, reputation, and appeal of BKC.

37. By reason of the foregoing, BKC has suffered damages, in an amount presently

unknown yet substantial. BKC is no longer is the source or sponsor of the Restaurant and does not endorse said Restaurant, or the products and services provided therein, has not authorized Defendant to use or display the BKC Marks to identify the terminated franchise facilities, products, or services, and has protested expressly against such use.

38. By virtue of the termination of the Franchise Agreement, BKC is unable to control the nature and quality of the goods and services that Defendant provides at the Restaurant.

39. BKC will suffer serious, immediate, and irreparable harm if Defendant's willful infringement of the BKC Marks at the Restaurant is not immediately enjoined. BKC's goodwill and reputation will suffer drastically by virtue of the public's identification of BKC with the management and operation of the Restaurant.

40. BKC exercises strict quality control over every phase in the marketing of BURGER KING® products and services, from specification of ingredients, to the supervision of food preparation and handling, to the maintenance of strict standards as to cleanliness, health, sanitation, and quality of service. The carefully nurtured image which BKC now enjoys will be irretrievably injured by any association with the Restaurant, which no longer is subject to BKC's control and supervision.

41. Defendant's sale of products and services under the BKC Marks at the Restaurant poses an immediate threat to the distinct, exclusive image BKC has created at great expense for its franchisees. BURGER KING® restaurants, services, and products are known by the BKC Marks which are emblematic of their distinctive source. BURGER KING® restaurants enjoy a special appeal to consumers which will be diluted by the existence of infringing restaurants with products and services bearing the distinctive BKC Marks. The intangible, but commercially indispensable, value that the BURGER KING® restaurants now enjoy will be severely undermined by the

operation of the Restaurant, which is making unauthorized use of the BKC Marks.

42. Consumer confusion as to the source or sponsorship of restaurants bearing the BKC Marks will be attended not only by an inevitable loss of product distinctiveness, image, and goodwill, but will also cause a diversion of sales from BKC. The economic injury to BKC resulting from such diversion is incalculable and, as such, is an additional source of irreparable harm.

## COUNT I
## LANHAM ACT INFRINGEMENT

43. BKC re-alleges Paragraphs 1 through 42 above as if fully set forth herein.

44. Defendant's acts constitute infringements of BKC's registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. 1114.

## COUNT II
## LANHAM ACT FALSE DESIGNATIONS

45. BKC re-alleges Paragraphs 1 through 42 above as if fully set forth herein.

46. Defendant's acts constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT

47. BKC re-alleges Paragraphs 1 through 42 above as if fully set forth herein.

48. Defendant's acts constitute unlawful trademark and service mark infringements under the common law.

## COUNT IV
## COMMON LAW UNFAIR COMPETITION

49. BKC re-alleges Paragraphs 1 through 42 above as if fully set forth herein.

50. Defendant's acts constitute unfair competition under the common law.

## COUNT V
## BREACH OF FRANCHISE AGREEMENT

51. BKC re-alleges and incorporates Paragraphs 1 through 42 above as if fully set forth herein.

52. Defendant's operation of the Restaurant after the expiration of the Franchise Agreement and his failure to abide by the post-termination covenants constitute breaches of the Franchise Agreement.

53. These breaches have directly and proximately loss and damage to BKC.

## DEMAND FOR ATTORNEYS' FEES AND COSTS

The Franchise Agreement at issue in this litigation provides that the prevailing party is entitled to its attorneys' fees and costs. BKC hereby demands that it be reimbursed by Defendant for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

WHEREFORE, Plaintiff Burger King Company LLC demands judgment against Defendant Altaf A. Chaus:

1. For preliminary and permanent injunction enjoining Defendant, and all persons acting on his behalf, in concert with him, or under his control, from:

    (a) manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the BKC Marks, or any colorable imitation thereof at the Restaurant;

    (b) displaying or using any of the BKC Marks to advertise or promote the sale of, or to identify, the Restaurant, or any product or service provided therein; and

    (c) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendant, the Restaurant, and the products and services provided therein, are in any manner,

directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Burger King Company LLC.

2. For preliminary and permanent injunctions directing Defendant, and all persons acting on his behalf, in concert with him, or under his control, to, with respect to the Restaurant:

(a) recall and deliver up to Burger King Company LLC all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials which bear, or make reference to, any of the BKC Marks, or any colorable imitation of the BKC Marks;

(b) recall and deliver up to Burger King Company LLC all copies and editions of the OPS Manuals that are in his actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto, and all other materials containing restaurant operating instructions, restaurant business practices, or plans of Burger King Company LLC;

(c) allow Burger King Company LLC, at a reasonable time, to enter the premises of the Restaurant and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from its appearance as a BURGER KING® Restaurant;

(d) account and pay over to Burger King Company LLC all gains, profits, and advantages derived by Defendant from the trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117, and by the controlling principles of common law.

3. For money damages, plus three times additional actual damages BKC has sustained

by reason of Defendant's trademark and service mark infringement, breach of contract, and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

4. For punitive damages because of the willful nature of Defendant's actions;

5. For pre-judgment interest and Burger King Company LLC's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreement and, because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

6. For an order enjoining Defendant from operating a quick service hamburger restaurant within a two-mile radius of the Restaurant for a one-year period;

7. For an order directing Defendant to file with the Court, and to serve on Burger King Company LLC's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendant has complied with such injunction or order;

8. For money damages due under the Franchise Agreement;

9. For all costs, disbursements, and expenses of this action; and

10. For all such other relief as this Court may deem just and proper.

Respectfully submitted,

By: s./ Jessica Serell Erenbaum
Michael D. Joblove, FBN 354147
mdjoblove@venable.com
Jessica Serell Erenbaum, FBN 816000
jserenbaum@venable.com
Venable LLP
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: (305) 349-2300
*Attorneys for Plaintiff Burger King Company LLC*

13